No. 24-1292

_____

UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

_____

JASON LEE,

*Defendant-Appellant*

v.

WILLIAM MANERY,

*Plaintiff-Appellee*

_____

Appeal From the United States District Court
for the Southern District of Indiana
Case No. 1:22-cv-239-SEB-MG
The Honorable Sarah Evans Barker

_____

BRIEF OF THE PLAINTIFF-APPELLEE

_____

Brandon E. Tate, #31531-49
Katherine A. Piscione, #37166-49
WALDRON TATE BOWEN LAND LLC
156 E. Market St. 5th Floor
Indianapolis, IN 46204
317-296-5294

Attorneys for the Plaintiff-Appellee

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 24-1292

Short Caption: William Manery v. Jason Lee, Marion County Sheriff's Office, et. al.

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐     **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

William Manery

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Waldron Tate Bowen Land LLC

(3)    If the party, amicus or intervenor is a corporation:

i)    Identify all its parent corporations, if any; and

N/A

ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

N/A

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

Attorney's Signature: /s/ Brandon E. Tate      Date: 2/27/2024

Attorney's Printed Name: Brandon E. Tate

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   **Yes** ☑  **No** ☐

Address: 156 E Market St, 5th Floor

Indianapolis, IN 46204

Phone Number: 317-296-5294      Fax Number: 317-423-0772

E-Mail Address: brandon@wtb-lawyers.com

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 24-1292

Short Caption: William Manery v. Jason Lee, Marion County Sheriff's Office, et. al.

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

    ☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

William Manery

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Waldron Tate Bowen Land LLC

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        N/A

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        N/A

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

Attorney's Signature: /s/ Katherine A. Piscione    Date: 2/27/2024

Attorney's Printed Name: Katherine A. Piscione

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    **Yes** ☐    **No** ☑

Address: 156 E Market St, 5th Floor

Indianapolis, IN 46204

Phone Number: 317-296-5294    Fax Number: 317-423-0772

E-Mail Address: katie@wtb-lawyers.com

rev. 12/19 AK

# Table of Contents

Circuit Rule 26.1 Disclosure Statement ................................................................. i

Table of Contents ................................................................................................. 1

Table of Authorities ............................................................................................. 3

Jurisdictional Statement ...................................................................................... 5

Statement of the Issues ........................................................................................ 6

Statement of the Case .......................................................................................... 7

    I.    Factual Background ................................................................................ 7

    II.    Procedural Background ......................................................................... 13

    III.    District court's ruling on Summary Judgment ..................................... 14

Summary of the Argument .................................................................................. 15

Argument ............................................................................................................. 16

    I.    Standard of Review ............................................................................. 16

    II.    This Court should dismiss Lee's appeal for lack of jurisdiction because Lee seeks review of the district court's denial of qualified immunity based on disputed facts and not on a pure question of law. .......................................................... 18

    A.    *Because the district court's denial of qualified immunity was due to the existence of disputed facts, this Court lacks jurisdiction over Lee's appeal* ............................................ 18

    B.    *This Court lacks jurisdiction to decide Lee's appeal under both prongs of the qualified immunity analysis* ................................................................................................ 22

        1.    Whether Lee's actions were objectively reasonable cannot be determined without a factual determination as to the threat level posed by Manery at the time of the shooting, a determination dependent on disputed facts ................. 22

        2.    Whether Manery's constitutional rights were clearly established at the time of the shooting cannot be determined without this Court making factual determinations ................................................................................................ 29

    III.    Should this Court determine it has jurisdiction, the district court's order denying summary judgment as to Jason Lee should be affirmed because at the time of the shooting it was clearly established that William Manery had a constitutional right to be free from excessive and deadly force. ....................................... 32

*A.*     *The standard of review for determining whether qualified immunity is appropriate requires construing facts in Manery's favor and not importing genuinely disputed issues of fact* ........................................................................................................................... 33

*B.*     *Construing the facts in Manery's favor, the district court did not err in denying qualified immunity to Lee.*................................................................................................... 34

**Conclusion**.................................................................................................................................... 40

**Certificate of Compliance With Type-Volume Limitation** ............................................... 42

**Certificate of Service**.................................................................................................................. 42

# Table of Authorities

## Cases

*Bland v. City of Newark*, 900 F.3d 77 (3rd Cir. 2018)...............................................................39

*Brosseau v. Haugen*, 543 U.S. 194 (2004) .................................................... 30, 31, 39

*Brumitt v. Smith*, 102 F.4th 444 (7th Cir. 2024) ................................................ 38, 39

*California v. Hodari*, 499 U.S. 621 (1991) ................................................................ 36

*Chilcutt v. Santiago*, No. 22-2916, 2023 U.S. App. LEXIS 18615, 2023 WL 4678583 (7th Cir. 2023) ........................................................................................................................ 22

*Common v. City of Chicago*, 661 F.3d 940 (7th Cir. 2011) ........................................ 36

*District of Columbia v. Wesby*, 138 S. Ct. 577 (2018)................................................ 30

*Ellis v. Wynalda*, 999 F.2d 243 (7th Cir. 1993)................................................... 31, 38

*Estate of Clark v. Walker*, 865 F.3d 544 (7th Cir. 2017) ............................................ 33

*Estate of Starks v. Enyart*, 5 F.3d 320 (7th Cir. 1993)...............................................40

*Estate of Williams v. Ind. State Police Dep't*, 797 F.3d 468 (7th Cir. 2015) ............................. 24

*Flowers v. Renfro*, 46 F.4th 631 (7th Cir. 2022) ....................................................... 22

*Ford v. Childers*, 855 F.2d 1271 (7th Cir. 1988).............................................. 37, 38, 39

*Friend v. Valley View Cmty. Unit Sch. Dist. 365U*, 789 F.3d 707 (7th Cir. 2015) .................. 18

*Gant v. Hartman*, 924 F.3d 445 (7th Cir. 2019)........................................................32

*Gonzalez v. City of Elgin*, 578 F.3d 526 (7th Cir. 2009) ............................................ 34

*Graham v. Connor*, 490 U.S. 386 (1989) ........................................................... 36, 36

*Greenburg v. Kmetko*, 922 F.2d 382 (7th Cir. 1991) .................................................. 31

*Gutierrez v. Kermon*, 722 F.3d 1003 (7th Cir. 2013)...........................................passim

*Hansen v. Bennett*, 948 F.2d 397 (7th Cir. 1991)................................................ 17, 27

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982) ............................................................... 33

*Horton v. Pobjecky*, 883 F.3d 941 (7th Cir. 2018) ............................................... 31, 38

*Hurt v. Wise*, 880 F.3d 831 (7th Cir. 2018) .............................................................. 25

*Jackson v. Curry*, 888 F.3d 259 (7th Cir. 2018)................................................passim

*Johnson v. Jones*, 515 U.S. 304 (1995) ......................................................... 6, 17, 27

*Jones v. Clark*, 630 F.3d 677 (7th Cir. 2011)...............................................6, 20, 34

*Jones v. Kuschell*, No. 21-1742, 2021 U.S. App. LEXIS 35126, 2021 WL 5563715 (7th Cir. 2021) ........................................................................................................................ 29

*Leaf v. Shelnutt*, 400 F.3d 1070 (7th Cir. 2005)................................................. 17, 27

*Lopez v. Sheriff of Cook County*, 993 F.3d 981 (7th Cir. 2021).................................. 31

*Lovett v. Herbert*, 907 F.3d 986 (7th Cir. 2018)....................................................... 30

*Lytle v. Bexar Cnty.*, 560 F.3d 404 (5th Cir. 2009) ............................................. 30, 31

*Marion v. City of Corydon*, 559 F.3d 700 (7th Cir. 2009)......................................... 27, 37

*Mullenix v. Luna*, 577 U.S. 7 (2015) ....................................................................... 30

*Northeastern Rural Electric Membership Corp. v. Wabash Valley Power Ass'n*, 707 F.3d 883
(7th Cir. 2013)..................................................................................................... 17

*Pearson v. Callahan*, 555 U.S. 223 (2009) ............................................................. 33

*Phillips v. Cmty. Ins. Corp.*, 678 F.3d 513 (7th Cir. 2012) ....................................... 37

*Plumhoff v. Rickard*, 572 U.S. 765 (2014) .............................................................. 29

*Saucier v. Katz*, 533 U.S. 194 (2001) ...................................................................... 30

*Scott v. Edinburgh*, 346 F.3d 752 (7th Cir. 2003)....................................................40

*Smith v. Finkley*, 10 F.4th 725 (7th Cir. 2021)................................................. passim

*Stainback v. Dixon*, 569 F.3d 767 (7th Cir. 2009) .................................................... 36

*Strand v. Minchuk*, 910 F.3d 909 (7th Cir. 2018) ......................................... 30, 31, 32

*Tennessee v. Garner*, 471 U.S. 1 (1985) ................................................. 23, 30, 36, 37

*Terry v. Ohio*, 392 U.S. 1 (1968)............................................................................. 36

*Thompson v. City of Chicago*, 472 F.3d 444 (7th Cir. 2006) ..................................... 37

*Tolan v. Cotton*, 572 U.S. 650 (2015) ...................................................................... 34

*Tousis v. Billiot*, 84 F.4th 692 (7th Cir. 2023)......................................................... 30

*United States v. Dunkel*, 927 F.2d 955 (7th Cir. 1991) ............................................ 18

*Weinmann v. McClone*, 787 F.3d 444 (7th Cir. 2014).............................................. 37

*White v. Gerardot*, 509 F.3d 829 (7th Cir. 2007)..............................................29, 32

**Statutes**

28 U.S.C. § 1291 ..................................................................................... 5, 15, 16

28 U.S.C. § 1331 ............................................................................................. 5

28 U.S.C. § 1343(a) ......................................................................................... 5

42 U.S.C. § 1983 ...................................................................................... passim

**Rules**

Fed. R. App. P. 28(a)(6)............................................................................. 17, 18

**Constitutional Provisions**

U.S. Const. Amend. IV................................................................................... 36

## JURISDICTIONAL STATEMENT

Appellant-Defendant Lieutenant Jason Lee's ("Lee") jurisdictional statement misconstrues the prevailing law controlling this Court's jurisdiction.

The United States District Court for the Southern District of Indiana, Indianapolis Division, pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a) has jurisdiction over the subject matter of Appellee William Manery's ("Manery") constitutional claims brought under 42 U.S.C. § 1983 against Lee. On February 9, 2024, Judge Sarah Evans Barker issued her Opinion and Order Granting in Part and Denying in Part Defendants' Motion for Summary Judgment. Notably, Judge Sarah Evans Barker denied Lee's request for a grant of qualified immunity from Manery's Fourth Amendment excessive force claim, which Lee sought in his Motion for Summary Judgment.

Lee filed his Notice of Appeal from the district court's denial of qualified immunity on February 23, 2024. Despite Lee's filing of his Notice of Appeal, this Court lacks jurisdiction to review the district court's denial of qualified immunity as an appealable collateral order under 28 U.S.C. § 1291 because Lee's appeal seeks review not of a question of law, but rather asks this Court to overturn the district court's finding of disputed facts that prevent qualified immunity. In short, Lee's appeal is nothing more than an attempt to resolve contested material factual disputes, and challenge the facts as determined by the district court in its rejection of Lee's request for qualified immunity.

This Circuit does not recognize jurisdiction over appeals denying qualified immunity when the appellant bases the appeal on "factual determinations regarding qualified immunity." *Johnson v. Jones*, 515 U.S. 304, 311 (1995); *Jackson v. Curry*, 888 F.3d 259, 262 (7th Cir. 2018). This Circuit has made clear that an "appellant challenging a district court's denial of qualified immunity effectively pleads himself out of court by interposing disputed factual issues in his argument." *Gutierrez v. Kermon*, 722 F.3d 1003, 1010-11 (7th Cir. 2013) (internal citations omitted). Moreover, it is the nature and content of the appeal itself that controls: "Even if the appellant disclaims any attempt to challenge the district court's conclusion that genuine disputes exist, we lack jurisdiction when his argument on appeal depends upon and is inseparable from disputed facts." *Id.* (internal citations omitted). As the Court in *Jones v. Clark*, put it "the district court decided that factual disputes prevented resolution of the officers' qualified immunity claim . . . . To a large extent, these conclusions represent factual determinations that cannot be disturbed in a collateral-order appeal." 630 F.3d 677, 680-81 (7th Cir. 2011).

Appellee will address how these rules apply specifically to this appeal in Section II of the Argument below.

## STATEMENT OF THE ISSUES

1. Whether this Court has jurisdiction to review the district court's denial of qualified immunity?

2. If this Court has jurisdiction, whether the judgment of the district court denying Lee's request for qualified immunity should be affirmed?

## STATEMENT OF THE CASE

### I.  Factual Background

On April 10, 2021, Marion County Sheriff's Office ("MCSO") received information from the Rutherford County Sheriff's Office that Manery was in the Broad Ripple, Indiana area and had active warrants out of Rutherford County Tennessee. [Dkt. 57-2]. The Rutherford County Sheriff's Office informed MCSO that Manery was driving a white Jeep Grand Cherokee with front end damage and a Tennessee license plate with number 7X73H4. [Dkt. 57-2]. MCSO was also advised Manery was armed with a handgun and had previously indicated he would commit suicide by cop.[1] [Dkt. 57-2].

While listening to radio traffic, Reserve Deputy Lee became aware of the request to serve a warrant on Manery. [Dkt. 57-3 at 25:10-14]. After hearing a request to find a picture of Manery, Lee advised Manery's photo could be found on Facebook. [Dkt. 57-3 at 26:17-21]. After relaying this information, Lee was asked to assist in serving the warrant. [Dkt. 57-3 at 27:13-17]. Lee joined the rest of the warrant team at an old Kroger store in Broad Ripple where the team was advised of Manery's location. [Dkt. 57-3 at 27:18-20, 29:7-13, 30:17-23]. The officers left the Kroger to travel to Manery's location, and upon arrival, Lee and other officers pulled up behind Manery's vehicle with

---

[1] It was ultimately determined Manery was unarmed.

another officer blocking the entrance/exit of the parking lot with his police cruiser. [Dkt. 57-3 at 32:15-25, 33:1-4].

Another member of the warrant team, Sean White, exited his police cruiser and advised the rest of the team that Manery was inside the vehicle and asleep in the driver's seat. [Dkt. 57-3 at 34:25, 35:1-2; Dkt. 57-5 at 4]. Prior to announcing themselves, MCSO officers, including Lee, drew their weapons and pointed them at Manery. [Dkt. 49-5, video collected from Darren Hickman (hereinafter, "Hickman Video") at 0:08-0:17]. With their weapons already pointed at Manery, MCSO officers began yelling "Show me your f[******] hands," "put your f[******] hands up," and instructing Manery not to move. [Dkt. 49-5, Hickman video at 0:17-0:25]. Lee then used the front of his gun in an unsuccessful attempt to break the passenger side window. [Dkt. 57-3 at 36:6-10].

The yelling and attempts to break the window woke Manery and the first thing he saw were the guns pointed directly at him. [Dkt. 57-1 at 51:6-9]. At this point in time, Manery was not aware the individuals with the guns were officers. [Dkt. 57-1 at 50:20-21]. Fearing he was about to be shot, Manery put his vehicle into reverse, striking Lee and Sean White's vehicles. [Dkt. 57-1 at 51:2-9; Dkt. 57-3 at 37:24-25]. As Manery was reversing, Lee began to pursue Manery's vehicle on foot. [Dkt. 57-3 at 38:18-20]. Manery continued to reverse, heading towards the police cruiser that was blocking the entrance/exit to the parking lot. [Dkt. 57-3 at 38:14-17; Dkt. 57-5 at 4]. Rather than hitting that police cruiser, Manery hit a curb, coming to a stop. [Dkt. 57-3 at 38:24-25, 39:1].

After getting stopped by the curb, Manery put the vehicle into drive and drove forward

towards another unoccupied police cruiser that was parked directly in front of him.

[Dkt. 57-3 at 40:4-6, 18-20; Dkt. 57-6; Dkt. 57-7]. Lee, who was still pursuing the vehicle

on foot, then moved to approximately a forty-five-degree angle to the right of the Jeep,

out of the path of the vehicle. [Dkt. 57-3 at 40:21-24].



[Dkt. 57-13]. After driving forward, Manery impacted the unoccupied police cruiser in

front of him at a perpendicular angle and was prevented from continuing to drive

forward. [Dkt. 57-14; Order at 6, 15].



[Dkt. 57-14].

After Manery's vehicle was prevented from moving forward, and after moving to the side of the vehicle, Lee opened fire. [Order at 7; Dkt. 57-3 at 43:23-25]. Lee fired a total of nine bullets, all of which entered the Jeep through the driver's side window and door. [Order at 7; Dkt. 57-3 at 43:23-25; Dkt. 57-6; Dkt. 57-8; Dkt. 57-9; Dkt. 57-10].

# Laboratory Examination Report

LAB21-02801



[Dkt. 57-9].



[Dkt. 57-10].

The first four to five shots were fired in quick succession, followed by a brief pause, and then a volley of the remaining bullets. [Order at 7; Dkt. 48-5, Hickman Video at 0:50-0:54].

After the shooting, Manery was pulled from the vehicle and transported to St. Vincent hospital in serious, but stable, condition. [Dkt. 57-3 at 47:20-21; Dkt. 57-4 at 1]. Manery suffered bullet wounds to his left arm, stomach, chest, and butt. [Dkt. 57-1 at 23:19-20]. As a result of his injuries, Manery has a colostomy bag that he continues to need and will likely need for the rest of his life, is unable to make a fist with his left hand, and his thumb, pointer finger, and middle finger of his left hand no longer fully function. [Dkt. 57-1 at 23:21-25, 24:1-3, 10-14]. The doctors were unable to remove the bullet that was lodged in Manery's chest, near his throat. [Dkt. 57-1 at 25:24-25].

Following his arrest, Manery pled guilty to "Count I: Resisting Law Enforcement a Level 6 Felony" with the understanding this was done because he "hit two cop cars

and tried to run from them." [Dkt. 57-11; Dkt. 57-1 at 35:21-23]. No factual basis for Manery's plea was included within the Plea Agreement.[2] [Dkt. 57-11].

## II. Procedural Background

On January 1, 2022, Manery filed his complaint against Lee, the MCSO, and the Consolidated City of Indianapolis and Marion County in Marion County Superior Court 11 alleging violations of state law claims as well as federal claims pursuant to 42 U.S.C. § 1983. Defendants then removed the case to federal court and moved for summary judgment. [Dkt. 1; Dkt. 46]. Summary judgment was fully briefed on June 8, 2023. [Dkt. 46; Dkt. 57; Dkt. 63]. On February 9, 2024, Judge Sarah Evans Barker issued her Order granting in part and denying in part Defendants' Motion for Summary Judgment. [Dkt. 76]. Lee filed his Notice of Appeal on February 23, 2024. [Dkt. 81].

---

[2] In his brief, Lee mischaracterizes Indiana law and the district court's holding. Lee asserts "Under Indiana law, his plea agreement 'constitutes an admission of the truth of all facts alleged in the charge or counts' to which he pleaded guilty." Appellant's Brief at 8. However, the district court's Order reads: "the plea agreement, in relevant part, expressly stipulates that it 'constitutes an admission of the truth of all the facts alleged in the charge or counts' to which Mr. Manery has pled guilty. Nowhere in the plea agreement, however, is a recitation of the underlying facts giving rise to the charge. According to Mr. Manery, he pled guilty because '[s]upposedly I hit two cop cars and tried to run from them.' Defendants' contention that Mr. Manery pled to 'driving . . . at Lt. Lee' is not supported in the factual record before us. The factual dispute on this point remains unresolved." Order at 29 (internal citations omitted).

### III.     District court's ruling on Summary Judgment

Judge Sarah Evans Barker granted Defendants' Motion for Summary Judgment as to Manery's *Monell* claim against MCSO and state law negligence claims against Lee. However, Judge Barker denied Defendants' Motion for Summary Judgment as to Manery's § 1983 and corresponding state law claims against Lee and MCSO. [Dkt. 76 at 30].

In her Order, Judge Barker considered all the evidence designated by the Parties, and drew all reasonable inferences in favor of Manery, the non-movant, when considering whether the claims against Lee should be dismissed.[3] [Dkt. 76 at 11, 15]. In her review, Judge Barker determined a factual dispute existed where a reasonable inference could be drawn that at the time Lee fired his weapon, he was safely out of the

---

[3] Lee identifies eight conclusions he believes the district court reached in denying summary judgment. A close review of those "conclusions" shows that Lee took great liberty in summarizing the district court's ruling, and at other times, disregards the court's reasoning. For example, Lee states "(6) Manery turned the Jeep's wheels towards Lt. Lee." In her Order, Judge Barker addresses the Jeep's wheels and states "From the video footage, it seems clear that Lt. Lee did not shoot Mr. Manery until *after* the Jeep had hit the parked car. Lt. Lee's description of the Jeep's wheels, therefore, simply does not take into account the obvious obstruction of the parked car." Order at 17. The other "conclusions" Lee identified are similarly loosely based on the district court's actual findings. The only conclusions Judge Barker made are that (1) Manery attempted to avoid arrest, (2) he initially drove in reverse, where he encountered a curb preventing him from continuing in that direction, (3) Manery then put the car in drive, where he collided with another police vehicle that prevented him from continuing to travel forward, (4) after Manery was stopped by the other vehicle, Lee discharged nine bullets into the driver's side of the Jeep. Based on these facts, and the reasonable inferences therefrom drawn in Manery's favor, Judge Barker determined a genuine issue of material fact prevented a finding of qualified immunity.

way and Manery was blocked from driving forward by the other on-scene police cruisers. [Dkt. 76 at 15]. Because of these factual disputes, a reasonable juror could find that Lee lacked probable cause to utilize deadly force at the time he fired his weapon. [Dkt. 76 at 13]. For similar reasons, Judge Barker concluded there could be no finding as to whether Manery's constitutional rights were clearly established at the time Lee shot him, because this finding was dependent on the level of threat posed by Manery at the moment Lee shot, which is a question of fact. [Dkt. 76 at 23]. In denying summary judgment, Judge Barker concluded any "qualified immunity determination is intertwined with factual disputes concerning threat level. A ruling on qualified immunity, therefore, must await a resolution of material factual disputes by the jury." [Dkt. 76 at 23, internal quotations omitted].

## SUMMARY OF THE ARGUMENT

Lee's appeal should be dismissed for lack of jurisdiction as Lee is asking this Court to review, not a pure question of law, but rather questions of fact. Appellate jurisdiction is generally limited to final decisions under 28 U.S.C. § 1291, but it does extend to collateral orders such as the denial of summary judgment on a defense of qualified immunity. *Smith v. Finkley*, 10 F.4th 725, 734-35 (7th Cir. 2021). But not all denials of qualified immunity at the summary judgment stage may be appealed. *Id*. at 735. Denial of qualified immunity on summary judgment may only be reviewed where the appeal is based on a pure question of law. *Id.*; *Jackson*, 888 F.3d at 262. In this case,

the district court properly concluded the "'qualified immunity determination is intertwined with factual disputes concerning threat level.' A ruling on qualified immunity, therefore, must await a resolution of material factual disputes by a jury." *See* Order at 23 (internal citations omitted).

However, even if this Court were to determine it has jurisdiction to review Lee's appeal, the Order of the district court should be affirmed. When taken in the light most favorable to Manery, the disputed facts can lead a reasonable juror to conclude that Lee lacked probable cause to shoot Manery. Additionally, federal law clearly established an officer's right to use deadly force may change from moment to moment and the right to use deadly force is not a blank check that can be used at any time.

## ARGUMENT

As an initial matter, Lee's appeal should be dismissed for lack of jurisdiction as Lee is asking this Court to review, not a pure question of law, but rather a question of fact. Accordingly, this Court lacks jurisdiction. However, even if this Court were to determine it has jurisdiction, the district court's Order should be affirmed.

### I.     Standard of Review

Appellate jurisdiction is generally limited to final decisions under 28 U.S.C. § 1291, but it does extend to collateral orders such as the denial of summary judgment on a defense of qualified immunity. *Smith*, 10 F.4th at 734-35. But not all denials of qualified immunity may be appealed. *Id.* at 735.  Denial of qualified immunity at

summary judgment may only be reviewed where the appeal is based on a pure question of law. *Id.* at 735. As the court in *Jackson* held:

> [T]he exception providing jurisdiction over denials of qualified immunity is limited to pure legal questions. We only have jurisdiction when the issue appealed concerned, not which facts the parties might be able to prove, but, rather, whether or not certain given facts showed a violation of clearly established law. Thus, defendants cannot immediately appeal factual determinations regarding qualified immunity.

888 F.3d at 262 (citations and quotation marks omitted).

The appellate court will review the record to determine whether or not it is able to decide the question of qualified immunity without also resolving issues of disputed fact. *Johnson*, 515 U.S. at 319-20. If the Court determines it cannot do so, then the Court lacks jurisdiction over the appeal. *Hansen v. Bennett*, 948 F.2d 397, 399 (7th Cir. 1991) (citation omitted); *See also, Leaf v. Shelnutt*, 400 F.3d 1070, 1078 (7th Cir. 2005) (on appeal, the reviewing court cannot decide arguments that "depend on the outcome of a disputed factual question."). "Even if the appellant disclaims any attempt to challenge the district court's conclusion that genuine factual disputes exist, we lack jurisdiction when his argument on appeal depends upon and is inseparable from disputed facts." *Gutierrez*, 722 F.3d at 1010-11. The party asserting jurisdiction has the burden of establishing it. *Northeastern Rural Electric Membership Corp. v. Wabash Valley Power Ass'n*, 707 F.3d 883, 893 (7th Cir. 2013).

Federal Rule of Appellate Procedure 28(a)(6) requires an appellant's opening brief contain "a concise statement of the case; setting out the facts relevant to the issues

submitted for review . . . with appropriate references to the record." Fed. R. App. P. 28(a)(6).[4] "[J]udges are not like pigs, hunting for truffles buried in [the record]." *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991). This Court may strike portions of an appellant's brief that fail to comply with Rule 28 and rely on unsupported facts. *Friend v. Valley View Cmty. Unit Sch. Dist. 365U*, 789 F.3d 707 (7th Cir. 2015).

II. **This Court should dismiss Lee's appeal for lack of jurisdiction because Lee seeks review of the district court's denial of qualified immunity based on disputed facts and not on a pure question of law.**

> A. *Because the district court's denial of qualified immunity was due to the existence of disputed facts, this Court lacks jurisdiction over Lee's appeal.*

This Court should dismiss Lee's appeal for lack of jurisdiction. For this Court to have jurisdiction over Lee's appeal, Lee's request for review must be based solely on a pure question of law. *Smith*, 10 F.4th at 735; *Jackson*, 888 F.3d at 262. Despite Lee's assertions to the contrary, Lee's request for review is not based on a pure question of law and is instead based on disputed facts and a rejection of the district court's findings on the relevant facts and issues in dispute. For Lee's claim to be an appealable issue, his argument would need to take a form much different than that presented. Lee would be required to argue that under a version of the facts most favorable to Manery, Lee should still be granted the benefit of qualified immunity. But of course, Lee's argument does

---

[4] A review of Lee's Statement of the Case as well as his references to "facts" throughout his Brief, without any citation to the Record, demonstrate that Lee has failed to comply with Federal Rule 28(a)(6).

not take such a form, because it can't. The district court made clear that the disputed facts concerning the timing of the shots that were fired precluded a finding of qualified immunity because if those facts were taken in a light most favorable to Manery, a reasonable juror could determine Lee lacked probable cause when he used deadly force against Manery. Lee instead ignores that there is a dispute as to those facts, hints that they are of no import, and draws a conclusion in his own favor. This is exactly the sort of argument that this Circuit has disclaimed in *Gutierrez* and its companion cases. 722 F.3d at 1010-11.

Lee's request to reconsider the district court's finding ignores the fact that whether a reasonable officer would have believed Manery posed a risk to Lee or other individuals in the area and whether a reasonable officer would have concluded the use of deadly force was justified are central and material factual disputes of this case. As the district court held "[o]n this basis alone, a reasonable juror could discount Lt. Lee's version of the facts and conclude instead that Mr. Manery's escape had been effectively prevented by the preceding collision." *See* Order at 16. Further, the district court concluded "this 'qualified immunity determination is intertwined with factual disputes concerning threat level.' A ruling on qualified immunity, therefore, must await a resolution of material factual disputes by a jury." *See* Order at 23 (internal citations omitted).

Lee's assertions on appeal are inseparable from the underlying disputed facts,

and therefore prevent this Court from having jurisdiction to consider Lee's appeal.

*Gutierrez*, 722 F.3d at 1010-11. While Lee couches these arguments as those based on a

pure question of law, when the content of the arguments is examined, it becomes clear

that Lee is instead requesting acceptance of his version of the district court's factual

conclusions in a "back-door effort" to contest, or in the alternative, ignore disputed facts

on appeal. *Jones*, 630 F.3d at 680. This can be seen in Lee's first Statement of the Issues:

> 1.      Willam Manery was wanted on a felony warrant and previously
> threatened "suicide by cop." The deputies were also told Manery was
> armed. When approached by Lt. Lee and his warrant team, Manery threw
> his Jeep into reverse, rammed a police car, struck a curb, and then drove
> towards Lt. Lee, hitting a second police car and stopping. Within three
> seconds of Manery starting to drive forward after hitting the curb, Lt. Lee
> fired. Was Lt. Lee's use of force reasonable under the Fourth Amendment
> in this dangerous and quickly evolving situation?

*See* Appellant's Brief at 2.  In the issue statement itself, Lee includes that Manery was

driving "toward Lee" and then intimates that this is when the shots were fired. *Id*.

However, these are the very facts the district court determined were in dispute and

precluded a grant of qualified immunity at the summary judgment stage.

Throughout his Brief, Lee attempts to highlight the reasonableness of his actions

by construing the facts in a light most favorable to himself, rather than in a light most

favorable to Manery. For example, Lee states: "When he fired, Lt. Lee still believed

Manery to be armed, and he was still aware of Rutherford County's admonition that

Manery had threatened to place himself and officers in a situation where they would need to use deadly force." *See* Appellant's Brief at 8. This statement ignores that in addition to this knowledge, Lee was also aware that Manery's vehicle was prevented from moving forward by an unoccupied police cruiser[5], that Lee was not standing in front of the vehicle, but rather to the side of the vehicle[6], and that none of the other five officers on the scene determined it was reasonable to exercise deadly force against Manery.[7] Lee also asserts his actions were reasonable because when he fired, he could not be sure the threat had ended as Manery may have gotten the car moving again, or may have gotten out of the car and attacked Lee or another officer. *See* Appellant's Brief at 20. Again, this speculation would require the court to draw inferences in favor of Lee. The facts of the case demonstrate that when Lee utilized deadly force, Manery's vehicle was no longer moving forward, and in fact was prevented from doing so by an occupied police cruiser, and Manery had made no movement to leave the vehicle, creating a disputed question of fact as to the level of threat Manery posed at that time Lee shot him.

While questions regarding objective reasonableness and the existence of a clearly established constitutional right are typically questions of law for the court to answer, when the answers to these questions depend on resolving a factual dispute, the court

---

[5] *See* Order at 6-7, 16-17; Dkt. 48-5.
[6] *See* Dkt. 48-5; Dkt. 57-3 at 40:21-25, 41:1-2; Dkt. 57-9; Dkt. 57-10; Dkt. 57-13; Dkt. 57-14.
[7] Dkt. 57-4 at p. 1; Dkt. 57-5 at p. 4.

cannot make a finding of qualified immunity. *Smith*, 10 F.4th at 735; *Jackson*, 888 F.3d at 262. The district court determined that the disputed facts in this case prevented a finding of qualified immunity as it was "intertwined with factual disputes concerning threat level" and a ruling on qualified immunity must therefore "await a resolution of material factual disputes by the jury." *See* Order at p. 23. A district court's finding of disputed facts preventing a decision on qualified immunity "is a strong indicator that the qualified-immunity denial is not appealable." *Chilcutt v. Santiago*, No. 22-2916, 2023 U.S. App. LEXIS 18615, *11, 2023 WL 4678583 (7th Cir. 2023) (citing *Flowers v. Renfro*, 46 F.4th 631, 634 (7th Cir. 2022)). Because Lee's appeal is inseparable from disputed facts, it should be dismissed by this Court for lack of jurisdiction. *Gutierrez*, 722 F.3d at 1010-11.

      B. *This Court lacks jurisdiction to decide Lee's appeal under both prongs of the qualified immunity analysis.*

The section above shows that Lee's appeal should be dismissed for lack of jurisdiction based on his attempt to relitigate disputed facts as to the question of qualified immunity as a whole. In what follows, the time is taken to apply that argument to each of the prongs of qualified immunity with particularity to show on a more granular level why there is a lack of jurisdiction to readdress either prong of the immunity question.

        **1. Whether Lee's actions were objectively reasonable cannot be determined without a factual determination as to the threat level posed by Manery at the time of the shooting, a determination dependent on disputed facts.**

Under the first prong of qualified immunity, the question is whether the totality of the circumstances justified the use of deadly force. *Smith*, 10 F.4th at 738 (citing *Tennessee v. Garner*, 471 U.S. 1, 8-9 (1985)). This question is evaluated from the standpoint of a reasonable officer on the scene under the *Graham* factors. *Smith*, 10 F.4th at 738. This Court recently considered the intersection of jurisdiction and qualified immunity in *Smith v. Finkley*, 10 F.4th 725 (7th Cir. 2021).

In *Smith*, the suspect, Jerry Smith, Jr. ("Smith"), reportedly left the scene of a fight and returned with a gun. *Id.* at 729. When approached by officers, Smith fled and was found hiding on a rooftop one block away. *Id.* When he was discovered, a standoff occurred with Smith refusing numerous orders to cooperate. *Id.* Two officers, Finkley and Stahl, approached Smith and believing he was armed, drew their guns. *Id.* The next events were disputed, with Smith claiming he was following officers' commands and going to the ground, and Finkley and Stahl stating Smith lunged at them. *Id.* Smith was then shot three times by Finkley and Stahl and the incident was captured on body camera. *Id.* Smith sued under § 1983 and Finkley and Stahl moved for summary judgment based on qualified immunity. *Id.* The district court denied this motion and Finkley and Stahl appealed the court's decision to deny qualified immunity. *Id.* The appeal was dismissed due to lack of jurisdiction. *Id.*

In determining whether the court had jurisdiction, the *Smith* court first considered whether the totality of the circumstances justified the use of deadly force. *Id.*

at 738. In their analysis, the court considered what a reasonable officer in that case would have known and perceived, including: (1) that Smith was suspected of committing a crime; (2) that there was a reasonable belief that Smith was armed; (3) that Smith's actions in fleeing and not complying with officers' commands demonstrated active resistance; and (4) the short-duration, high stress episode necessitated quick decisions in dangerous and uncertain circumstances with about 45 seconds elapsing between the time Finkley and Stahl arrived at the scene and the shooting. *Id.* at 738-39.

The court acknowledged that at first blush it appeared many of the circumstances justified the use of deadly force from the perspective of a reasonable officer stepping onto the roof where Smith stood. *Id.* at 739. However, the court did not stop its analysis at first blush. The court recognized that the totality of the circumstances to justify a seizure also includes the period just before and during the shooting. *Id.* (citing *Estate of Williams v. Ind. State Police Dep't*, 797 F.3d 468, 483 (7th Cir. 2015)). When considering the facts of those moments, the moments just before the shooting and during, the court concluded that there were relevant factual disputes that could be dispositive of the qualified immunity analysis, namely: (1) how Smith moved to the ground before he was shot, and (2) whether Smith presented an immediate threat. The *Smith* court determined that these two issues directly impacted two of the *Graham* factors, namely the threat level posed by the suspect and the suspect's resistance, or lack thereof. *Smith*, 10 F.4th at 739.

The court ultimately concluded that in the seconds prior to the shooting, Smith's actions could have deescalated the situation to a point where deadly force was no longer warranted when Smith was shot. *Id.* Because those few seconds were in dispute, the Court could not determine whether a reasonable officer would react in the same way. As the court correctly stated, to do so would require it to consider inferences from facts which the parties dispute, an exercise the court "cannot do without going beyond [it's] jurisdiction on this interlocutory appeal." *Id.* (citing *Hurt v. Wise*, 880 F.3d 831, 839 (7th Cir. 2018)).

Similarly, for this Court to determine whether Lee's actions were reasonable, the Court would have to go beyond its jurisdiction. As the district court determined in its Order, on the day of Manery's shooting, Lee knew that Manery was wanted on a warrant for aggravated assault with a vehicle, believed he was armed, and had threatened suicide by cop on an unspecified prior occasion. *See* Order at 14. Additionally, it is undisputed that Manery actively resisted arrest by disregarding officers' commands and attempting to flee. *See* Order at 14. The entire encounter with Lee and Manery lasted less than one minute, was unpredictable and stressful, and required Lee to make split-second judgments. *See* Order at 14. All of these facts are facts also present in *Smith*.

The district court, like the court in *Smith*, correctly recognized that to make its decision it must include in the totality of the circumstances analysis, the totality of the

facts, which includes the periods just before and during the shooting. *See* Order at 14; *Smith*, 10 F.4th at 739. And, as the district court correctly held, it is these moments that make separating the facts and the law on this issue impossible. *See* Order at 14-16, 18-19, 23.

Lee claims that when he made the decision to shoot Manery, Manery was driving straight towards him. *See* Order at 14. In contrast, Manery claims that at the moment Lee shot, Lee was safely out of the way and Manery was prevented from driving forward by an unoccupied police cruiser. *See* Order at 15. The district court correctly concluded:

> The video footage makes clear that Lt. Lee fired his first shot after Mr. Manery had collided with the parked car and was no longer moving forward. On this basis alone, a reasonable juror could discount Lt. Lee's version of the facts and conclude instead that Mr. Manery's escape had effectively been prevented by the preceding collision. If a jury were so to conclude, it would undermine Lt. Lee's argument that Mr. Manery posed an immediate threat that justified deadly force.[8]

*See* Order at 16.

The district court denied summary judgment because the issue as to whether Manery posed an immediate risk to officers or the public, and therefore whether deadly force was justified, could not be resolved without also deciding factual disputes—a task

---

[8] While Lee asserts the video is unclear as to the exact position Lee was standing when he fired his shots, a review of all of the video evidence, as well as the investigative reports, and Lee's own deposition testimony reveal that he was standing off to the side of the Jeep when he fired his weapon. *See* Dkt. 48-5, Hickman Video at 0:50-0:54; Dkt. 57-3 at 40:21-25, 41:1-2; Dkt. 57-9; Dkt. 57-10; Dkt. 57-13; Dkt. 57-14.

inappropriate for the district court, and one that this court has repeatedly disclaimed jurisdiction to undertake on appeal. *See* Order at 16; *Smith*, 10 F.4th at 735; *Jackson*, 888 F.3d at 262; *Johnson*, 515 U.S. at 319-20; *Hansen*, 948 F.2d at 399; *Leaf*, 400 F.3d at 1078.

While Lee claims he is seeking review of the district court's judgment based on law, his argument on appeal is based on, and is inseparable from, the disputed facts. *See* Appellant's Brief at 13-21. Throughout his brief, Lee disagrees with the conclusions reached by the district court in its Order denying summary judgment:

> But in concluding these disputed facts prevented summary judgment, the district court did not properly weigh in its reasonableness assessment that Lt. Lee had to make his split second decision to fire with the knowledge that Manery had previously threatened to commit suicide by a confrontation with law enforcement, that Manery was wanted for multiple felony charges including a warrant for aggravated assault with a vehicle, and was armed[9] – facts told to Lt. Lee and his team by another law enforcement agency.

*See* Appellant's Brief at 16. As the court in *Smith* reasoned, while these facts may be true, the few seconds before a shot is fired must also be considered, and those seconds can directly impact the reasonableness of the officers' actions and the level of force that is justified. *Smith*, 10 F.4th at 739. As in *Smith,* the district court took the facts highlighted by Lee, as well as the disputed facts not highlighted by Lee, and came to a

---

[9] This "knowledge" was in fact only the subjective belief of Lee, as demonstrated by the undisputed fact that Manery was not armed. Subjective beliefs of an officer concerning the potential presence of a weapon are not relevant to a use of force inquiry into whether that belief provided a sufficient formation for the use of deadly force. *See Marion v. City of Corydon*, 559 F.3d 700, 705 (7th Cir. 2009).

determination that the facts in dispute precluded a finding of qualified immunity at the summary judgment stage. *See* Order at 14-16, 18-19, 23.

While Lee claims he "accepts the determinations by the district court," (*See* Appellant's Brief at 15-16) he is in truth attempting to present his proffered factual conclusions in a "back-door effort" to contest facts on appeal. *Jones*, 630 F.3d at 680.

> The video evidence, however, shows that after Manery hit the curb and then revved his engine – a sound Lt. Lee said was the loudest thing he ever heard – Manery did drive in Lt. Lee's direction. Plaintiff conceded as much when he admitted that after hitting the curb, he "drove forward, directly toward another police vehicle that was blocking his path forward. As William Manery drove forward toward a vehicle, Jason Lee fired . . . ."

*See* Appellant's Brief at 15. Lee spends considerable time arguing the facts to this Court attempting to establish that at the moment he fired his weapon he was in direct and imminent danger. But whether he was in direct and immediate danger is a fact the district court already concluded is materially in dispute based on the video footage from that day and Lee's own deposition testimony which offered little to no clarity. *See* Order at 15-16. This is a direct request by Lee to have this court, on an interlocutory appeal, overturn a district court's determination that a fact is in dispute.

Based on the totality of the evidence presented, the district court did not make the finding that Lee asks this Court to make by reweighing the evidence. Instead, the district court found it could not make a determination whether or not Lee was in direct and imminent danger. It determined it could not do so because where Lee was in relation to the unoccupied police cruiser that was struck and whether Manery would

have posed a threat after his collision with the unoccupied police cruiser are both

determinative of the issue as to whether Lee was in imminent danger or not. And, as the

district court determined, both of those data points are facts that are disputed by the

Parties.

If this Court were to try and resolve these factual disputes, it would be

evaluating the quantity and quality of proof, looking to the sufficiency of the evidence

for the denial of qualified immunity, which is not eligible for interlocutory

consideration. *Smith*, 10 F.4th at 741 (citing *Plumhoff v. Rickard*, 572 U.S. 765, 772 (2014)).

Lee may be protected by qualified immunity, but before that question can be

decided, the factual disputes regarding the extent of the threat Manery posed and how

actively he was resisting at the time of the shooting must be resolved. *See Jones v.*

*Kuschell*, No. 21-1742, 2021 U.S. App. LEXIS 35126, *8, 2021 WL 5563715 (7th Cir. 2021).

As the district court found, these disputes cannot be separated from whether a

constitutional right was violated. They are front and center in this matter and they

prevent this Court from retaining jurisdiction over Lee's appeal. *See Smith*, 10 F.4th at

742; *Gutierrez*, 722 F.3d at 1011; *White v. Gerardot*, 509 F.3d 829, 835 (7th Cir. 2007).

> **2. Whether Manery's constitutional rights were clearly established**
> **at the time of the shooting cannot be determined without this**
> **Court making factual determinations.**

On the second prong of qualified immunity, the question is whether the

constitutional right at issue was clearly established at the time of the alleged violation.

*District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018). A right is clearly established when every reasonable official would have understood that what he was doing violates that right. *Lovett v. Herbert*, 907 F.3d 986, 992 (7th Cir. 2018). Courts undertake this inquiry in light of the specific context of the case and not as broad, general propositions. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Though there does not have to be a case that is directly on point, existing precedent must have placed the statutory or constitutional question beyond debate. *Mullenix v. Luna*, 577 U.S. 7, 12 (2015). When undertaking this inquiry, courts focus on whether the officer had fair notice that his conduct was unlawful. *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004). Therefore, reasonableness is judged against the backdrop of the law at the time of the conduct. *Id.*

It is well settled that where an officer has probable cause to believe that an individual poses a threat of serious physical harm to either the officer or the public, it is reasonable to use deadly force to prevent escape. *Tousis v. Billiot*, 84 F.4th 692, 698 (7th Cir. 2023) (citing *Tennessee*, 471 U.S. 1, 11 (1985)). It is equally well settled that, "[t]hreats can diminish, and resistance can decrease." *Smith*, 10 F.4th at 748. If threats and resistance have diminished, a reasonable officer may not conclude that in that situation it is lawful to use deadly force. *Id.* (citing *Strand*, 910 F.3d at 915)). "An exercise of force that is reasonable **at one moment can become unreasonable in the next** if the justification for the use of force has ceased." *Smith*, 10 F.4th at 748 (quoting *Lytle v. Bexar Cnty.*, 560 F.3d 404, 413 (5th Cir. 2009) (emphasis added)). Or put more succinctly,

"authoriz[ation] to use deadly force at one moment . . . is not a blank check." *Smith*, 10 F.4th at 748 (quoting *Lopez v. Sheriff of Cook County*, 993 F.3d 981, 987 (7th Cir. 2021)). This is a moment-to-moment determination, as this Court has previously found that even though an officer may in **one moment** confront circumstances where deadly force can be used, that does not mean deadly force can be used in the **next moment**. *Horton v. Pobjecky*, 883 F.3d 941, 950 (7th Cir. 2018); *Ellis v. Wynalda*, 999 F.2d 243, 247 (7th Cir. 1993).

The shooting at issue in this case occurred on April 10, 2021. *See* Order at 2. Pursuant to federal law, Lee is held to a reasonableness standard that existed at the time of his actions, and not to an unknown evolution in the law. *Brosseau*, 543 U.S. at 198; *Greenburg v. Kmetko*, 922 F.2d 382, 385 (7th Cir. 1991). The above cited cases[10] make it clear, that on August 10, 2021, it was well known that even when an officer may justifiably use deadly force at one moment, that justification is not a blank check to use deadly force once the justifiable threat has diminished. This was true from as early as 1993, twenty-eight years prior to the shooting of Manery on April 10, 2021. *Ellis*, 999 F.2d at 247.

The district court properly concluded that at the time of Manery's shooting, the law was clear: deadly force is justified only when there is an immediate threat. *See*

---

[10] *Smith*, 10 F.4th at 748; *Strand*, 910 F.3d at 915; *Lytle*, 560 F.3d at 413; *Lopez*, 993 F.3d at 987.

Order at 21. It also properly concluded that in this case, whether Manery was driving at Lee when he first shot, or was even capable of doing so after the collision with the unoccupied police cruiser, are material facts in dispute. *See* Order at 21-23. Because of these factual disputes, the district court concluded, as it must in such situations, that a "ruling on qualified immunity, therefore, must await a resolution of the material factual disputes by the jury." *See* Order at 23. This includes a ruling on the second prong itself.

Caselaw confirms that in excessive force cases under 42 U.S.C. § 1983 involving diminished threat of harm and waning danger from a suspect, appellate jurisdiction is absent. *Smith*, 10 F.4th at 743 (citing *White*, 509 F.3d 829 (7th Cir. 2007); *Strand v. Minchuk*, 910 F.3d 909 (7th Cir. 2018); *Gant v. Hartman*, 924 F.3d 445 (7th Cir. 2019)). The district court was clear that in this case, the factual disputes raised questions as to whether Manery posed an immediate risk to the officers' and the public's safety after the collision with the unoccupied police cruiser that stopped his forward motion. *See* Order at 18. There is no question that the constitutional right at issue in this case was clearly established at the time of Manery's shooting—namely that deadly force cannot be used when there is no longer an imminent threat of danger. And because there exist factual disputes determinative of that question, that until resolved prevent a finding of whether or not Lee or the public were in imminent danger at the time of the shooting, this Court does not have jurisdiction and Lee's appeal must be dismissed.

III.    **Should this Court determine it has jurisdiction, the district court's order denying summary judgment as to Jason Lee should be affirmed because at**

**the time of the shooting it was clearly established that William Manery had a constitutional right to be free from excessive and deadly force.**

The judgment of the district court denying qualified immunity to Lee should be affirmed even if jurisdiction is found to review the immediate appeal. On April 10, 2021, when Lee shot Manery in Broad Ripple, Indiana, controlling precedent clearly established that an officer's use of deadly force against a suspect who does not pose an imminent risk of death or serious harm to officers or the public is unconstitutional and objectively unreasonable. Based on the facts in the record, and construing the facts in Manery's favor, a reasonable juror could find Lee shot Manery when there was no imminent risk of death or serious harm to officers or the public. If there is jurisdiction to hear this appeal, the judgment of the district court denying qualified immunity to Lee should be affirmed.

> A. *The standard of review for determining whether qualified immunity is appropriate requires construing facts in Manery's favor and not importing genuinely disputed issues of fact.*

When there is appropriate jurisdiction to do so, a district court's denial of a request for summary judgment based on qualified immunity is reviewed *de novo. See Estate of Clark v. Walker*, 865 F.3d 544, 549 (7th Cir. 2017). Qualified immunity protects government officials from civil liability insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457

U.S. 800, 818 (1982)). The appellate court in reviewing a defendant-appellant's request for qualified immunity conducts a two-part inquiry: "(1) whether the facts, taken in the light most favorable to the plaintiff, show that the defendant violated a constitutional right; and (2) whether the constitutional right was clearly established at [that] time." *Gonzalez v. City of Elgin*, 578 F.3d 526, 540 (7th Cir. 2009).

       B.   *Construing the facts in Manery's favor, the district court did not err in denying qualified immunity to Lee.*

Even if the Court finds it has jurisdiction to review the denial of qualified immunity to Lee, the Court should affirm the district court's judgment. On April 10, 2021, controlling precedent clearly established that it was objectively unreasonable and a violation of the Fourth Amendment to shoot a suspect who does not pose an imminent risk of death or serious harm to officers or the public. When the facts of this case are construed in Manery's favor, as required, the Court should find that the district court did not err in denying qualified immunity to Lee on Manery's claims. If the Court determines it has jurisdiction to review Lee's appeal, the district court's judgment should be affirmed.

Whether qualified immunity applies turns on two questions: first, whether the facts presented, taken in the light most favorable to the plaintiff, describe a violation of a constitutional right; and second, whether the federal right at issue was clearly established at the time of the alleged violation. *Tolan v. Cotton*, 572 U.S. 650, 655-56 (2015). These questions may be addressed in either order. *Jones*, 630 F.3d at 682.

First, the facts, when taken in the light most favorable to Manery would permit a reasonable juror to conclude that on April 10, 2021, Lee used deadly force against Manery even though an objectively reasonable officer would have concluded that Manery's threat had diminished and he no longer posed an imminent threat to the officers or the public. The test is what a reasonable officer would have believed, and Manery presented sufficient evidence that an objectively reasonable officer would not have exercised deadly force in this scenario. In fact, none of the five officers on the scene, other than Lee, fired their weapons.[11] At the point in time that Lee fired his weapon, Lee was standing to the side of Manery's vehicle.[12] This is confirmed by the fact that none of Lee's nine bullets entered through the front windshield or the quarter-panel, but instead all bullets entered through either the driver's side window and door.[13] At this point in time, Manery's path forward was also blocked by unoccupied police cruiser. *See* Order at 23. All of this evidence, when taken in the light most favorable to Manery, could reasonably lead to the conclusion that at the moment Lee fired his weapon, any potential threat previously presented by Manery had diminished to the point where deadly force was unjustified. A conclusion the district court also reached:

> Viewing the facts in the light most favorable to the non-moving party (Mr. Manery), the Jeep's movement toward Lt. Lee stopped when the Jeep struck

---

[11] Dkt. 57-4 at p. 1; Dkt. 57-5 at p. 4.
[12] Dkt. 57-3 at p. 40, lines 21-24.
[13] Dkt. 57-6; Dkt. 57-8; Dkt. 57-9; Dkt. 57-10.

the parked car. Lt. Lee's decision to shoot was made after Mr. Manery had nowhere to go, which effectively reduced the immediacy of the threat to the officers, making the use of deadly force unjustified.

*See* Order at 23.

Second, it was clearly established on April 10, 2021, that an officer's use of deadly force against an individual who does not pose an imminent risk of serious harm or death to officers or the public is unconstitutional and objectively unreasonable. *See* Section II.B above.

The Fourth Amendment and the United States Constitution protect individuals from unreasonable searches and seizures by police officers. U.S. Const. amend. IV; *California v. Hodari*, 499 U.S. 621, 624 (1991). Its protections restrict an officer's use of force, including deadly force, during a search or seizure. *Tennessee*, 471 U.S. 1, 7 (1985); *Terry v. Ohio*, 392 U.S. 1, 9 (1968). A police officer's use of force under this analysis violates the Fourth Amendment when it is objectively unreasonable or unnecessary under the given set of circumstances. *Graham v. Connor*, 490 U.S. 386, 395 (1989). The application and level of force used by an officer "is circumscribed by the Fourth Amendment's insistence on reasonableness." *Stainback v. Dixon*, 569 F.3d 767, 772 (7th Cir. 2009). A police officer's use of force is therefore reviewed to determine if it is objectively reasonable. *Common v. City of Chicago*, 661 F.3d 940, 943 (7th Cir. 2011). An officer's subjective belief concerning the reasonableness of the force applied is not relevant to the inquiry. *Graham*, 490 U.S. at 397. Use of force by a police officer is

objectively unreasonable and excessive, if, judging from the totality of the circumstances existing at the time, the officer uses greater force than necessary in the situation. *Phillips v. Cmty. Ins. Corp.*, 678 F.3d 513, 519 (7th Cir. 2012); *Thompson v. City of Chicago*, 472 F.3d 444, 454 (7th Cir. 2006).

Use of deadly force may be objectively reasonable where an officer has probable cause to believe that a suspect poses an imminent threat of serious physical harm to himself or others. *Tennessee*, 471 U.S. at 7; *Marion v. City of Corydon*, 559 F.3d 700, 705 (7th Cir. 2009). However, an officer's use of deadly force outside of this context is not reasonable, such as using deadly force to prevent a fleeing felon's escape. *Tennessee*, 471 U.S. at 11-12. A criminal suspect "has a right not to be seized through the use of deadly force unless he puts another person (including a police officer) in imminent danger or he is actively resisting arrest and the circumstances warrant that degree of force." *Weinmann v. McClone*, 787 F.3d 444, 448 (7th Cir. 2014). "[T]he firing of a weapon must never become an automatic response to the law enforcement officer when attempting to capture a fleeing felon." *Ford v. Childers*, 855 F.2d 1271, 1276 (7th Cir. 1988). The determination of the existence of probable cause for the use of deadly force is "usually a jury question." *Id.* at 1275.

As has been described in length above, the right to use deadly force is fluid, and can change from moment to moment. This Court has previously found that even though an officer may in **one moment** confront circumstances where deadly force can

be used, that does not mean deadly force can be used in the **next moment**. *Horton v. Pobjecky*, 883 F.3d 941, 950 (7th Cir. 2018) (emphasis added); *Ellis v. Wynalda*, 999 F.2d 243, 247 (7th Cir. 1993) (emphasis added). As this Court has said:

> "[W]e are impelled to emphasize that this court must and will continue to be vigilant in ensuring that when an officer makes the critical judgment to use deadly force, his or her actions will be subject to scrutiny and review. As noted above, an officer oftentimes has only a split second to make the critical judgment of whether to use his weapon. But this fact alone will never immunize an otherwise unreasonable use of deadly force."

*Ford*, 855 F.2d at 1276.

Lee attempts to justify his use of force by reliance on *Brumitt v. Smith*, a decision issued by this Court on May 20, 2024, and cases from other circuits. However, these cases are distinguishable and not relevant to whether Manery's constitutional rights were clearly established on April 10, 2021. First, Lee relies heavily on *Brumitt* for the proposition that an officer is not expected to discontinue force at the "precise second a suspect acquiesces." *Brumitt v. Smith*, 102 F.4th 444, 448 (7th Cir. 2024).[14] However, *Brumitt* is readily distinguishable from the present case. First, in *Brumitt*, the force used was not deadly and involved the officer punching the suspect. *Id.* at 446. Secondly, the

---

[14] It should be noted that this case was decided three years after the shooting of Manery on April 10, 2021. As noted in Lee's own Brief, an officer "need not predict [the law's] evolution, need not know that in the fight between broad and narrow readings of a precedent the broad reading will become ascendant." *See* Appellant's Brief at 27. Defendant is correct, that is why whether a constitutional right is clearly established is judged against the backdrop of the law at the time of the conduct. *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004).

officer's force against the suspect did not start until **after** the suspect had hit the officer in the face. *Id.* Lastly, and most importantly, when determining the officer was entitled to qualified immunity, the court considered the fact that the force began **before** the suspect was subdued. *Id.* at 446, 448-49. This is in direct opposition to the facts in the present case. In this case the facts lead to the reasonable conclusion that Lee's use of deadly force did not begin until **after** Manery was stopped and no longer posed an imminent threat. *See* Order at 23. Lee waited until after Manery had crashed into an unoccupied police cruiser that blocked his way, and after any potential threat Manery posed had diminished. This is what makes Lee's actions unconstitutional and unreasonable. A split second decision to discharge a weapon will never immunize an otherwise unreasonable use of deadly force. *Ford*, 855 F.2d at 1276.

The other cases cited by Lee are from outside circuits and are also distinguishable from the present case. For example, in *Bland v. City of Newark*, the suspect continued to resist after crashing his car and tried to climb out of the car's window to get to the police officers, while threatening to kill them; it was only then that the officers discharged their weapons. 900 F.3d 77, 80-84 (3rd Cir. 2018). None of those facts are analogous to this case.

Lee asserts that Manery did not provide analogous cases to demonstrate that Lee was not entitled to qualified immunity. This is untrue.[15] Both cases cited by Manery

---

[15] Dkt. 57 at pp. 21-24.

below, *Estate of Starks v. Enyart*, 5 F.3d 320 (7th Cir. 1993) and *Scott v. Edinburgh*, 346 F.3d 752 (7th Cir. 2003) involve an officer firing a weapon at a suspect that was fleeing in a vehicle. In both cases, the courts heavily considered the time at which the use of force was used and used that timing to determine whether summary judgment was appropriate. That is exactly what the district court did in this case when it determined that no decision on qualified immunity could be made until a jury decides the disputed issues of fact. *See* Order at 23.

On April 10, 2021, there can be no doubt that deadly force could not be used with impunity and that the right to use deadly force could in fact change from moment to moment, requiring officers to make split second decisions regarding their use of deadly force. Accordingly, when taking the disputed facts in the light most favorable to William Manery, his constitutional rights were clearly established on April 10, 2021. Because a reasonable officer at the scene could have determined the use of force was unreasonable, and Manery's constitutional rights were clearly established, the decision of the district court should be affirmed.

## CONCLUSION

The appeal should be dismissed for lack of jurisdiction. However, should this Court determine it has jurisdiction, the Order of the district court should be affirmed.

Respectfully submitted,

/s/ Brandon E. Tate

Brandon E. Tate, #31531-49
Katherine A. Piscione, #37166-49
WALDRON TATE BOWEN LAND LLC
156 E. Market St. 5th Floor
Indianapolis, IN 46204
317-296-5294
brandon@wtb-lawyers.com
katie@wtb-lawyers.com

Attorneys for the
Plaintiff-Appellee

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION

1.      This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) this document contains 10,019 words.

2.      This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because: this document has been prepared in a proportionally spaced typeface using Microsoft Word Version 16.16.2 in 12-point Palatino Linotype font.

Dated: June 28, 2024                              /s/ Brandon E. Tate
                                                                Attorney for Plaintiff-Appellee


## CERTIFICATE OF SERVICE

        Pursuant to Fed. R. App. P. 25, I certify that on June 28, 2024, I served a copy of the foregoing document electronically on all registered counsel through the Court's EM/ECF system.

                                                                /s/ Brandon E. Tate
                                                                Attorney for Plaintiff-Appellee