# IN THE
# UNITED STATES COURT OF APPEALS
# FOR THE SEVENTH CIRCUIT
## NO. 24-1292

| | |
|---|---|
| JASON LEE, | ) |
| | ) Appeal from the |
| Defendant-Appellant, | ) United States District Court |
| | ) |
| v. | ) Southern District of Indiana, |
| | ) Indianapolis Division |
| WILLIAM MANERY, | ) |
| | ) Case No. 1:22-cv-239 SEB-MG |
| Plaintiff–Appellee. | ) |
| | ) The Hon. Sarah Evans Barker, |
| | ) Judge |

---

## REPLY BRIEF OF DEFENDANT-APPELLANT

---

Anthony W. Overholt, #16481-49
Darren A. Craig, #25534-49
Alexander P. Will, #23474-49
Frost Brown Todd LLP
111 Monument Circle, Suite 4500
P.O. Box 44961
Indianapolis, IN 46244-0961
Telephone:   (317) 237-3800
Facsimile:   (317) 237-3900
Email:       aoverholt@fbtlaw.com
             dcraig@fbtlaw.com
             awill@fbtlaw.com

Attorneys for Defendant-Appellant

# TABLE OF CONTENTS

**Page**

Table of Contents ........................................................................................ i

Table of Authorities ................................................................................... ii

Argument ..................................................................................................... 1

    I.     This Court has jurisdiction over this appeal because Lt. Lee accepts all the district court's factual findings for purposes of appeal and the issue presented is rooted in a pure question of law—a question whose answer the district court got wrong. ....................................................... 1

        A.     The Supreme Court permits interlocutory appeals from the denial of qualified immunity on summary judgment where the facts are disputed so long as those facts are either immaterial for purposes of appeal or a defendant accepts the facts as found by the district court that are construed in a plaintiff's favor. ....................................................... 2

        B.     This Court's decisions support Lt. Lee's decision to fire given the one or two seconds Lt. Lee had to react after Manery, in his attempt to escape, hit the second police car................................. 5

    II.    Because the district court's decision that Lt. Lee was required to stop and reevaluate the scene before firing is contrary to decisions of this Court and because Plaintiff failed to show the law was clearly established, Lt. Lee is entitled to qualified immunity from damages regardless of how this Court resolves the Fourth Amendment question. ...... 11

Conclusion ................................................................................................. 13

Certificate of Compliance with F.R.A.P. Rule 32(a)(7)................................ 14

Certificate of Service.................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Behrens v. Pelltier*, 516 U.S. 299 (1996)..................................................................... 3

*Brumitt v. Smith,* 102 F.4th 444 (7th Cir. 2024) ...................................................... 11

*Johnson v. Jones*, 515 U.S. 304 (1995).................................................................... 2, 3

*Johnson v. Scott*, 576 F.3d 658 (7th Cir. 2009).................................................... 8, 11

*Mitchell v. Forsyth*, 472 U.S. 511 (1985)..................................................................... 2

*Sanzone v. Gray*, 884 F.3d 736 (7th Cir. 2018)...................................................... 5, 8

*Saucier v. Katz,* 533 U.S. 194 (2001)........................................................................... 1

*Siegert v. Gilley*, 500 U.S. 226 (1991) ......................................................................... 1

*Smith v. Finkley*, 10 F.4th 725 (7th Cir. 2021) ........................................................... 8

*Strand v. Minchuk*, 910 F.3d 909 (7th Cir. 2018)..................................................... 12

# ARGUMENT

**I.  This Court has jurisdiction over this appeal because Lt. Lee accepts all the district court's factual findings for purposes of appeal and the issue presented is rooted in a pure question of law—a question whose answer the district court got wrong.**

To decide whether Lt. Lee is entitled to qualified immunity, this Court should first determine whether Plaintiff has alleged the deprivation of an actual constitutional right at all, and if so, then determine whether the right was clearly established at the time of the alleged violation. *Siegert v. Gilley*, 500 U.S. 226, 232-33 (1991).

Because the goal of qualified immunity is to avoid excessive disruption of government and permit the resolution of many non-meritorious claims on summary judgment, prompt and final resolution of qualified immunity issues is required:

> Where the defendant seeks qualified immunity, a ruling should be made early in the proceedings so that the cost and expenses of trial are avoided where the defense is dispositive. Qualified immunity is an entitlement not to stand trial or face the other burdens of litigation. The privilege is an immunity from suit rather than a mere defense to liability; and, like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial. As a result, we have repeatedly stressed the importance of resolving immunity questions at the earliest possible stage in litigation.

*Saucier v. Katz,* 533 U.S. 194 (2001). (internal citations and quotations omitted).

**A.** **The Supreme Court permits interlocutory appeals from the denial of qualified immunity on summary judgment where the facts are disputed so long as those facts are either immaterial for purposes of appeal or a defendant accepts the facts as found by the district court that are construed in a plaintiff's favor.**

Plaintiff's challenge to this Court's jurisdiction shows a misunderstanding of the governing law. Because prompt resolution of qualified immunity questions prevents the unnecessary burden of going to trial, the Supreme Court has determined that, as a general rule, qualified immunity rulings are immediately appealable under the collateral order doctrine. *Mitchell v. Forsyth*, 472 U.S. 511, 529-30 (1985). Plaintiff suggests that whenever the facts are disputed on summary judgment and a district court determines that a trial is necessary, this Court lacks jurisdiction to entertain a qualified immunity appeal. Plf's Br. at 17-18. But the law is more nuanced than that.

Plaintiff is trying to fit this case into a narrow subset of claims not permitted to be appealed. Those non-appealable claims exist only when application of qualified immunity turns on a specific factual dispute that must be resolved by a jury as discussed in cases such as *Johnson v. Jones*, 515 U.S. 304 (1995). In *Johnson*, the Supreme Court held that a qualified immunity appeal challenging a district court's decision that certain material facts were wrongly identified as being "genuinely" disputed could not be immediately appealed. Here, Lt. Lee is not challenging whether the two disputed facts found by the district court are genuinely in dispute. To the contrary, Lt. Lee accepts those disputed facts as true for purposes of this appeal.

Because Lt. Lee accepts those facts before this Court, the collateral order doctrine provides this Court with jurisdiction. *Johnson* stressed that point. As *Johnson* holds, an appeal from the denial of summary judgment, even if factual disputes are present, can still occur so long as the appellate court takes "as given, the facts that the district court assumed when it denied summary judgment." *Id.* at 319.

Further supporting this Court's jurisdiction over this dispute is *Behrens v. Pelltier*, where the Supreme Court, in response to a claim that *Johnson* foreclosed appeals of summary judgment denials of qualified immunity when material fact issues remained, held:

> Denial of summary judgment often includes a determination that there are controverted issues of material fact, see Fed. Rule Civ. Proc. 56, and *Johnson* surely does not mean that *every* such denial of summary judgment is nonappealable. *Johnson* held, simply, that determinations of evidentiary sufficiency at summary judgment are not immediately appealable merely because they happen to arise in a qualified immunity case; *if what is at issue in the sufficiency determination is nothing more than whether the evidence could support a finding that particular conduct occurred, the question is not truly separable from the plaintiff's claim*, and hence there is no final decision under *Cohen* and *Mitchell.*

516 U.S. 299, 313 (1996) (emphasis supplied).

*Behrens* shows why this appeal is on solid jurisdictional footing. There were two factual findings made by the district court as the basis for denying summary judgment. First, the district court found that as Manery reversed direction and began driving towards Lt. Lee, Lt. Lee moved to the side of Manery's oncoming Jeep. (Dkt. 76 at 16.) Second, after Lt. Lee moved to the side of the oncoming Jeep, Manery struck a second police car and came to a stop just a second or two before Lt.

Lee fired his weapon. (Dkt. 48-5, Hickman Video; *see also* Dkt. 76 at 14 ("…the scene evolved into an unpredictable, highly stressful situation, requiring Lt. Lee to make split-second judgments."))

Here, Lt. Lee is not challenging whether the evidence supports the district court's determination that those two facts are disputed. Rather, Lt. Lee challenges the district court's determination that in that tense and rapidly evolving encounter with a wanted suspect he believed was armed, the Fourth Amendment required him to pause to re-evaluate the situation when Manery came to a stop after hitting the second police car. *See* Dkt. 76 17-18 ("Arguably, at the moment of the collision, the threat Mr. Manery posed could have sufficient diminished such that the totality of the circumstances no longer warranted the use of any force, never mind deadly force. . . . A factual dispute remains as to whether Mr. Manery posed an immediate threat once he was no longer moving forward at all.")

Lt. Lee's position is that as a matter of law, he was not required to stop and re-evaluate at that critical point in the encounter and that instead, he was permitted to fire at the moment he did. As discussed in the next section, this issue of whether Lt. Lee was required to pause and reassess after Manery ran into the second police car and came to a stop is a question of law rather than a challenge about whether the district court correctly found those facts in dispute. Thus, this Court has jurisdiction under *Behrens*.

**B.**     **This Court's decisions support Lt. Lee's decision to fire given the one or two seconds Lt. Lee had to react after Manery, in his attempt to escape, hit the second police car.**

Further undercutting Plaintiff's jurisdictional argument and supporting Lt. Lee's decision to fire when he did is *Sanzone v. Gray*, where this Court reviewed the denial of an officer's claim to qualified immunity on summary judgment. In *Sanzone*, Officer Gray was accused of using excessive force when he fired his weapon at a suspect, Koster. 884 F.3d 736 (7th Cir. 2018). The district court found that while Koster pointed a gun at Officer Gray and threatened to fire a warning shot, Gray's decision to fire still had to be evaluated by a jury. As this Court explained, the district court found there was a question of fact about whether the officer "used greater force than was reasonable because *he did not take cover or wait. . .* before shooting." *Sanzone v. Gray,* at 739 (emphasis added).

This Court reversed the district court's determination a trial was required and found there was no Fourth Amendment violation as a matter of law:

> Gray did not violate Koster's Fourth Amendment right by defending himself and other officers once Koster pointed a gun at them. A visibly agitated Koster threatened that he would "fire a warning shot," and then raised his arm, gun in hand. While the Estate contends that Koster's warning shot would have been fired straight up in the air, we will not assume that. Koster could easily have meant that he intended to attempt firing a bullet that would whiz past Gray's ear. Gray did not need to wait and hope that Koster was a skilled marksman before taking action to shut down Koster's threat. Indeed, these circumstances place this case handily among others in which the court has sanctioned the use of deadly force.

*Id*. at 740.

Contrary to Manery's arguments before this Court that factual disputes

deprive this Court of jurisdiction, this case parallels *Sanzone* where this Court reached the merits despite the district court's determination that there were disputed facts requiring a trial. Here, the district court found that there was a question of fact because Lt. Lee, like Officer Gray, did not wait to fire in order to reassess the situation after Manery struck the second police car and came to a stop when trying to escape. Like the district court held in *Sanzone*, the district court here said that Lt. Lee should have waited to see how the scene played out because it may have been that Manery would have taken no additional action after striking the second police car as the threat he posed "could have sufficiently diminished." Dkt. 76 17-18.

The district court's insistence that Lt. Lee take a "wait and see" approach given that he was able to move out of the path of Manery's oncoming Jeep before firing is particularly troubling given the other facts established by the district court which supported Lt. Lee's actions. Those facts were:

(1) deputies went to the scene to serve a felony warrant for, among other charges, aggravated vehicular assault (Dkt. 6 at 2);

(2) deputies located Manery sitting in a Jeep at the location they were informed he would be found, a fact that supported the reliability of the information they had from another law enforcement agency about Manery as they went to serve the warrant (Dkt. 76 at 3-4);

(3) Manery was reasonably believed to be armed and previously threatened "suicide by cop," a reference to the threat that Manery made

indicating he wanted to place himself a highly dangerous situation where officers would be likely to use deadly force against him (Dkt. 76 at 14.);

(4) Manery refused deputy commands to surrender when deputies woke him. Instead, he fidgeted in his pockets, started the Jeep, and tried to escape while deputies were standing next to that vehicle (*Id.* at 5);

(5) Manery put the Jeep into reverse, struck a police car, shoving it out of the way with the Jeeep, and then continued in reverse but hit a curb during his attempted escape (*Id.* at 6);

(6) Manery then put the Jeep into drive and drove forward toward Lt. Lee (*Id.* at 7);

(7) Lt. Lee got out of the path by moving approximately 45 degrees to the side of the Jeep as Manery drove toward him (*Id.* at 16);

(8) Manery turned the Jeep's wheels toward Lt. Lee (*Id.* at 6);

(9) Manery struck another police car as he drove forward and then came to a stop (Dkt. 76 at 6; 17);

(10) Lt. Lee fired at Manery approximately two seconds later. (*Id.* at 6); and

(11) Manery pled guilty to a felony for resisting law enforcement as a result of his actions during his apprehension. (Dkt. 76 at 8.)

The district court's conclusion that the Fourth Amendment required Lt. Lee to wait rather than firing within two seconds of Manery running into the second police car was wrong as matter of law. Instead, Lt. Lee was permitted to fire when

he did, like the officer in *Sanzone*. *Johnson v. Scott*, 576 F.3d 658 (7th Cir. 2009) supports that conclusion. In that case, the officer's action in releasing a police dog just *after* the suspect's surrender was reasonable because officers must have sufficient time to comprehend that the suspect has been subdued:

> Here, Scott had no idea how Johnson was going to behave once he was cornered. No law that we know of required Scott to take Johnson's apparent surrender at face value, a split second after Johnson stopped running. Until he encountered a fence that was too high for him to jump over, Johnson had used every method at his disposal to flee from the police. The surrender also did not establish that Johnson was unarmed. A reasonable officer could think that the use of the dog was necessary to help control Johnson; otherwise, Johnson might have had the time he needed to retrieve and use a weapon. Finally, it is worth noting that it could not have been more than one second between Johnson's surrender and the use of force by Scott, given the distance between Archer and Johnson at the time of surrender. In short, Scott's use of force—in the form of Archer—to subdue Johnson was objectively reasonable, given the uncertainties in the situation that faced him.

*Johnson v. Scott*, 576 F.3d at 680-81.

Just as Officer Scott was not liable for releasing a police dog after Johnson's surrender, Lt. Lee is not liable for firing at Manery just two seconds after he ran his Jeep into a second police car. Lt. Lee could not predict how Manery would act after the second collision, and his reckless behavior in the seconds before that collision amply justified Lt. Lee's firing his weapon to prevent Manery's felony escape.

In response, Manery relied on a case decided by this Court after his arrest by Lt. Lee and his warrant team on April 10, 2021, *Smith v. Finkley*, 10 F.4th 725 (7th Cir. 2021).[1] In *Smith*, this Court found that it lacked jurisdiction over the qualified

---

[1] *Smith v. Finkley* was decided on August 10, 2021. As this Court knows, this decision may inform the resolution of the Fourth Amendment question presented,

immunity appeal because of disputed factual issues. But two crucial differences exist between *Smith* and this case for purposes of the jurisdictional question.

First, the plaintiff in *Smith* provided testimony contradicting the officers' version of events about exactly how the scene unfolded and whether he was in the process of surrendering when the officers fired. That testimony went to the core issue of the reasonableness of the officers' decision to fire. Unlike *Smith*, Manery provided *no testimony* contradicting Lt. Lee's sworn statements about how events happened. As a result, the only disputed facts found by the district court for purposes of the Fourth Amendment inquiry were whether Lt. Lee should have waited and reassessed the situation after Manery came to a stop after attempting to flee and whether Lt. Lee's movement out of Manery's path as he tried to flee sufficiently reduced the risk such that Lt. Lee was not justified in using deadly force. Because Lt. Lee has accepted those facts for purposes of appeal, this Court has jurisdiction to consider the question of law raised by the district court's decision: did the district court err when it held that Lt. Lee was required to wait and reevaluate the scene after Manery came to a stop and before Lt. Lee fired?

Second, the undisputed facts found by the district court show that Lt. Lee had reason to believe he was facing a far more dangerous suspect than the officer faced in *Smith*. Unlike the suspect in *Smith*, Manery was wanted on a felony warrant for his aggravated assault with a vehicle, evasion of arrest, and violation of probation. Dkt 76 at 2-3. Manery was also known to have threatened "suicide by

---

but it cannot defeat Lt. Lee's qualified immunity claim because it was decided after the events in this case occurred.

cop," making him an especially dangerous suspect. *Id.* Lt. Lee's knowledge of these facts, in turn, supported Lt. Lee's decision to fire when he did.

Manery's actions in the seconds before Lt. Lee fired reinforced his previous threat to die in an encounter with law enforcement. Confronted by Lt. Lee's warrant team, Manery did not surrender peacefully. Instead, he started the Jeep, put it into reverse and rammed his way past the police car parked behind him to prevent his escape. He then hit a curb, reversed direction again, hit a second police car, and came to a stop. That is, not only did Manery commit a felony by resisting Lt. Lee's warrant team (a charge to which he pleaded guilty), but he displayed precisely the sort of behavior Rutherford County warned about in that he wanted to place himself into a deadly force encounter with law enforcement.

With all of that information known to Lt. Lee, the district court incorrectly determined that rather than immediately firing at Manery to prevent his escape, the Fourth Amendment required Lt. Lee to wait, further evaluate the scene, and see what Manery would do next after coming to a stop. To the contrary, the Fourth Amendment permitted Lt. Lee to use deadly force to prevent Manery's escape as a fleeing felon believed to be armed based on his behavior at the scene. The district court's contrary conclusion was error, and it should be reversed.

**II.    Because the district court's decision that Lt. Lee was required to stop and reevaluate the scene before firing is contrary to decisions of this Court and because Plaintiff failed to show the law was clearly established, Lt. Lee is entitled to qualified immunity from damages regardless of how this Court resolves the Fourth Amendment question.**

As Lt. Lee explained in his opening brief, this Court's decisions in *Brumitt v. Smith,* 102 F.4th 444 (7th Cir. 2024) and *Johnson v. Scott* control here as they show that the district court misapplied the Fourth Amendment. In the alternative, Lt. Lee explained that *Brumitt* shows why he is entitled to immunity as the law governing the constitutional inquiry was not clearly established on August 10, 2021.

Plaintiff offers three justifications for why *Brumitt* does not control here:

> First, in *Brumitt,* the force used was not deadly and involved the officer punching the suspect. *Id.* at 446. Secondly, the officer's force against the suspect did not start until **after** the suspect had hit the officer in the face. *Id.* Lastly, and most importantly, when determining the officer was entitled to qualified immunity, the court considered the fact that the force began **before** the suspect was subdued. *Id.* at 446, 448-49.

(Plf's Br. at 38-39, footnote omitted.) As to Plaintiff's first point, he fails to explain why the differing degrees of force used in *Smith* and our case matter as to the Fourth Amendment issue presented. By not offering any argument for the significance of this point, Manery has waived the issue. Moreover, for purposes of the constitutional question here, the degree of force is immaterial.

Manery's second point supports a finding of qualified immunity. He points to the fact that in *Brumitt*, the officer's use of force began after the suspect hit the officer. In other words, he emphasizes that the officer used force in response to the

initial use of force by the suspect, which is exactly what happened in this case. Lt. Lee fired his weapon only after Manery resisted by refusing deputy commands, attempting to flee, and hitting two police cars in an escape attempt.

Finally, Manery emphasizes that in *Brumitt*, the officer used force before the suspect was subdued. Again, the same is true here. Lt. Lee fired just two seconds after Manery came to a stop after running into the second police car in his attempt to escape. By suggesting that he had been subdued *immediately* upon striking the second car, Manery makes the same error as the district court. Lt. Lee lacked sufficient time to reassess the chaotic scene before firing to prevent Manery's violent escape, and *Brumitt* says he did not have to do so as a law enforcement officer cannot instantaneously process new information in that sort of rapidly evolving scene. Instead, *Brumitt* and *Johnson v. Scott* say that even today, the law does not require a reasonable officer to stop and reassess that dangerous, chaotic encounter before firing.

Further, his reliance on cases such as *Strand v. Minchuk*, 910 F.3d 909 (7th Cir. 2018), is unavailing as officers in those cases had far more time to assess the situations they confronted before they acted. Here, Lt. Lee did not have that luxury. Therefore, the law as it stands even today says Lt. Lee was permitted to fire at Manery. Even if this Court determines that *Brumitt* and *Johnson* are distinguishable such that Lt. Lee can be held liable under the Fourth Amendment, no reasonable officer would have understood that such a distinction prevented Lt.

Lee's actions. Instead, if such a distinction exists under the Fourth Amendment, that change in law must be applied prospectively.

## CONCLUSION

Lt. Lee requests that this Court hold that he did not violate the Fourth Amendment when he fired at Manery as he committed felony resisting law enforcement with a vehicle. Even if this Court does not reverse on that basis, Lt. Lee is entitled to immunity based on *Brumitt* and *Johnson v. Scott*.

FROST BROWN TODD LLP

By: */s/ Anthony W. Overholt*
    Anthony W. Overholt, #16481-49
    Darren A. Craig, #25534-49
    Alexander P. Will, #23474-49
    FROST BROWN TODD LLP
    111 Monument Circle, Suite 4500
    P.O. Box 44961
    Indianapolis, IN 46244-0961
    Telephone:   (317) 237-3800
    Facsimile:   (317) 237-3900
    Email:       aoverholt@fbtlaw.com
                 dcraig@fbtlaw.com
                 awill@fbtlaw.com

    Attorneys for Defendant-Appellant

## CERTIFICATE OF COMPLIANCE WITH F.R.A.P. RULE 32(a)(7)

The undersigned counsel, in compliance with F.R.A.P. Rule 32(a)(7), hereby certifies that this brief conforms to the rules contained in F.R.A.P. Rule 32(a)(7) for a brief produced with a proportionally spaced font. Specifically, based upon the word count of our word processing program, Microsoft Word 2016, I certify that the Brief of Defendant-Appellee contains 3,509 words, exclusive of the items listed in F.R.A.P. 32(f).

FROST BROWN TODD LLC

By: */s/Anthony W. Overholt*
Anthony W. Overholt, #16481-49

Dated: July 16, 2024

## CERTIFICATE OF SERVICE

I hereby certify that on July 16, 2024, I electronically filed the foregoing Reply Brief of Appellees with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

*/s/Anthony W. Overholt*
Anthony W. Overholt

LR10348.0975408   4890-8288-3533v3